REDMANN, Judge.
We granted certiorari in this suit for partition of community property to review the trial judge’s refusal of protective orders against an ex-wife’s deposing of her ex-husband concerning his earnings, and subpoenaing his income tax returns and his employer’s payroll records, for the five years the parties lived apart from each other subsequent to the filing in Jefferson parish of the husband’s never-terminated “separation” (actually, divorce) action but prior to the filing in Orleans parish of the husband’s successful divorce action.
The ex-wife’s theory is that a husband’s earnings are community property under the general rule of La.C.C. 2402,[1] even when living apart from his wife not judicially separated (under which circumstances the wife’s earnings are her separate property, C.C. 2334, 3d para.[2]) and that her ex-husband’s earnings continued to fall into their community until the judgment in the Orleans divorce action terminated the community retroactively to the filing of that action (see C.C. 155 [3]).
The ex-husband contends, principally, that C.C. 155 terminates the community as of the filing of his earlier “separation” (divorce) suit, but he also argues other questions including state and federal constitutionality under equal protection clauses.
We amend the trial court’s ruling and grant, in part, the protective orders sought.

Facts

The husband sued for divorce in Jefferson on May 10, 1971 (on the grounds of two years living apart, since January 13, 1969) and in Orleans on May 13, 1976 (on the grounds of living apart since January 1970). The second divorce petition did not expressly dismiss and thus abandon the earlier action as did (in respect to an earlier separation action) that of McMichael v. McMichael, 1967, 251 La. 654, 205 So.2d 433, cert. denied, 393 U.S. 871, 89 S.Ct. 159, 21 L.Ed.2d 140; see Bynacker v. McMichael, La.App., 194 So.2d 335 at 338. Divorce was granted in Orleans on June 7, 1976. On March 4, 1977 the ex-wife filed the present proceeding for partition of the community property and sought to discover the ex-husband’s earnings by subpoenaing his and his employer’s records and by taking his deposition. The ex-husband moved to limit discovery to earnings prior to the filing of the earlier suit for “separation”, primarily on the theory that the divorce judgment dissolved the marital community retroactively to the filing of the earlier suit. The trial court reasoned that the judgment terminated the community as of the filing of the successful divorce suit and accordingly refused to disallow discovery of the ex-husband’s earnings prior to that date. On the ex-husband’s application we granted certio-rari.

Res Judicata

We agree with the trial court’s ruling that res judicata does not result from the divorce petition’s allegation that the community had been amicably settled. That allegation was not adjudicated by the judgment of divorce, which was silent on the matter. Accordingly there is no showing of partition as a thing adjudged.

Accountability for Earnings

Despite the facial theoretical correctness of the ex-wife’s view that she is entitled to an accounting of the husband’s salary after their parting, the Louisiana Supreme Court has held (1) the husband need not account for his regular salary *1181 (upon which alimony is quantified), but (2) he must account for salary bonuses; McMi-chael, supra. The accounting for the bonuses may, moreover, be satisfied by showing expenditures for “necessities, repairs of the community . . ., hospital, drug and medical bills” without any showing of why regular income did not satisfy those obligations; Bynacker v. McMichael, La.App. 4 Cir. 1975, 310 So.2d 159, 162, writ refused 313 So.2d 835. The evident basic position of the Louisiana courts, as exemplified in McMichael and Bynacker, is that C.C. 2404 allows the husband (whether living with or apart from the wife) to spend his own income which falls into the community without having to account to the wife, as long as he does not dispose of it “by fraud, to injure his wife”. Thus, in the absence of any allegation that the husband has disposed of his income in order to injure the wife, the only “accountability” that the husband has is for all of the “effects” which he possesses at the time of the community’s dissolution, C.C. 2405. (C.C. 2334 accomplishes more for the wife living apart from her husband: her earnings do not fall into the community.)
Accordingly, the ex-wife’s discovery of regular salary must be disallowed on authority of McMichael, supra, but not her discovery of the husband’s bonuses.

Community Termination

The husband’s principal argument is that the judgment of divorce terminated the community retroactively under La.C.C. 155 as of the 1971 filing of the husband’s unterminated “separation” (divorce) suit rather than as of the 1976 filing for divorce. McMichael, supra, ruled that judgment could not to that extent retroact in a wife’s 1961 divorce suit expressly dismissing her unterminated 1958 separation suit. We hold McMichael applicable. A second .divorce petition, alleging as grounds two years’ living apart, beginning at a date both different from that alleged in the first petition and less than two years prior to the first petition, amounts to an express abandonment of the first petition as ill-founded. The judgment on the second divorce petition, because it is the equivalent of and more than a separation judgment, does terminate the community retroactively to the filing of the (second) petition for divorce, by clearest implication from C.C. 155 (n. 3, supra). But termination cannot retroact to the first petition for divorce when that petition was judicially confessed to be ill-founded. See Sciambra v. Sciambra, La. App. 4 Cir. 1963, 153 So.2d 441, writ refused, 244 La. 900, 154 So.2d 768, and Hodson v. Hodson, La.App. 2 Cir. 1974, 292 So.2d 831, writ refused, 295 So.2d 177, both holding the community dissolved as of the date of the successful reconventional demand, rather than the date of the rejected original petition. (Foster v. Foster, La.App. 4 Cir. 1971, 246 So.2d 70, writ refused, 247 So.2d 867, a post-divorce partition action, held the community terminated as of the filing of a separation suit, but it does not say whether the separation action resulted in judgment. The concurring opinion speaks of “the judicial separation”, indicating that there had been a judgment of separation.)

Interpretation of C.C. 2334

The Louisiana Supreme Court has utilized C.C. 21 and 160 to reason that permanent alimony is available for a needy ex-husband from an able ex-wife and that therefore C.C. 160 is not violative of the equal protection and sex-discrimination clauses of La.Const. art. 1 § 3 in providing alimony for the “wife”. Loyacano v. Loyacano, La.1978, 358 So.2d 304. A similar interpretation in the future (overruling McMichael, supra) may find,. perhaps by “extensive interpretation” in the Civil Law tradition, Geny, Method of Interpretation (La.Law Inst. trans.) § 105, that the principle of the 1912 amendment of C.C. 2334 is that the spouse (despite that article’s word “wife”) who no longer shares a community life should not be obliged to divide his or her earnings with the other spouse. By extensive interpretation C.C. 2334’s explicit provision for the wife could apply to the husband as well, making his earnings while living separate and apart, although not judicially separated, his separate property just as the wife’s are hers.
*1182 It remains beyond our power to overrule McMichael.

Constitutional Arguments

We do not consider the state and federal equal protection arguments..
All that remains involved is the disclosure of the ex-husband’s bonuses, and his “accounting” for them with the easily-supplied means of Bynacker, supra. If there remain any “effects” at the termination of the community attributable to his earnings while non-judicially separated, the ex-husband can raise the constitutional questions when the ex-wife seeks to obtain a partition of those effects which would be separate property under C.C. 2334 if similarly acquired by a non-judicially separated wife.

Decree

The trial courts ruling is modified to maintain the ex-husband’s rule for protective orders to the extent that discovery is prohibited as to his earnings subsequent to January 1970 except that the employer’s records of bonuses from then until May 13, 1976 may be subpoenaed and the ex-husband may be deposed concerning bonuses during that period.
STOULIG, J., concurs with written reasons.

. C.C. 2402 includes in the community “the produce of the reciprocal industry and labor of both husband and wife”.

. The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.

.The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed .