KLIEBERT, Judge.
This is a devolutive appeal from a judgment of the trial court dated November 30, 1981 “... homologating the inventory and the final accounting for same ...” and discharging the notary public appointed by the court to effect'a partition of the community of acquets and gains existing between the parties prior to their divorce in 1969. We amend the judgment of the trial court and affirm the judgment as amended.
There was a previous appeal in this community settlement litigation. See Lee v. Lee[1] 375 So.2d 769 (4th Cir.1979).
In February of 1974, Mrs. Marguerite Lee, the wife, filed a petition against Mr. George Lee, the husband, to partition the community of acquets and gains formerly existing between them. A 1976 inventory of the community property had included, among other assets and claims of the community, the husband’s military pension. A rule to exclude the military pension from the inventory was filed by the husband. Following a hearing on the rule, on April 5, 1977, the trial court excluded the military pension from the inventory of community assets on the grounds it was the separate property of the husband.
Thereafter, in August 1977, the husband answered the wife’s petition for a partition of the community of acquets and gains. In *804 the answer he asked for the appointment of a notary to make the partition, for an accounting between the parties prior to a sale, and for a sale of the real estate at public auction. By judgment dated October 10, 1977, the trial court ordered the sale of the community house by the sheriff at public auction and referred the proceeds of the sale to Lenon J. Parent, Jr., a notary public, for disbursement to the parties as their interest might appear. The judgment further provided that each party’s right to an accounting for community property administered or alienated was specifically reserved. All costs of the partition were to be borne by the community of acquets and gains and assessed to the parties at the final distribution by the notary. The community house was sold and the proceeds of the sale submitted by the sheriff to the notary in May 1978.
Then, in June of 1978, the wife filed a motion against the husband for an accounting in which she sought credits for costs and attorney fees allegedly paid by her, and again asserted an entitlement to a portion of the husband’s pension.[2] Following a hearing, the trial court considered the motion as an untimely application for a new trial of the April 5, 1977 judgment and, on September 20,1978, rendered judgment dismissing the wife’s motion of June 1978. Additionally, the judgment ordered the notary to complete the partition and include therein the net proceeds derived from the sale of the community home.
The wife appealed the September 10, 1978 judgment to the Fourth Circuit assigning as error the trial judge’s decision to exclude the husband’s military pension from the inventory of community assets. In an opinion dated September 13, 1979, the Fourth Circuit decided the September 20, 1978 judgment was an interlocutory one and hence not appealable. Consequently, the appeal was dismissed and the case remanded for further proceedings.
On December 19, 1979, the notary appointed to effect the partition filed a pleading entitled “Final Accounting of Inventory”. The document recites the notary’s efforts to effect a settlement on the disbursement of the funds from the sale of the real estate. It also shows the notary deducted his agreed-upon notarial fee from the proceeds of the sale which he was holding, divided the balance and forwarded checks for same to the husband and to the wife.
The wife’s attorney immediately returned the notary’s check and filed a pleading in September 1980 entitled “Motion to Show Cause for Disbursement of Funds without Authority.” In essence, the motion was a rule against the notary to show cause why he disbursed the funds belonging to the community before there had been a proper accounting between the parties or a court order directing how the funds were to be disbursed and why the funds disbursed by the notary should not be returned to the court pending the issuance of such a court order.
In response, the notary, in April, 1981, filed an answer stating the funds had been disbursed in accordance with an agreement of all counsel, therefore, there was no need for him to file a proces verbal in compliance with the Code of Civil Procedure prior to disbursing the funds and alternatively asked that in the event the court found the funds were improperly disbursed that all funds be returned to him. Following a hearing, on May 15, 1981, the wife’s September 1980 rule against the notary was made absolute and the notary ordered to file a proces verbal of his receipts and proposed disbursements.
Pursuant to this order, on May 27, 1981, the notary filed a pleading entitled “Recapitulation of Accounting”. In response, the wife filed a pleading entitled “An Opposition to the Recapitulation of Accounting”.
Following a hearing on the wife’s opposition, the trial judge, on November 30, 1981, rendered judgment decreeing “. .. that the *805 inventory and final accounting for same is hereby homologated and the notary is discharged”. It is from this judgment the wife brought this appeal.
In his verbal reasons for judgment, the trial judge interpreted his October, 1977 judgment as being solely an order to sell the community house with the parties being reserved the right to seek an accounting between themselves. Although we agree with his results we do so for reasons other than that stated by him.
The litigation commenced when the wife sought to partition the community of ac-quets and gains. This resulted in an inventory and appraisement of all community assets and ultimately in the October 17, 1977 judgment ordering, among other things, the sale of the community property. Subsequent to the October 17, 1977 judgment, however, following the hearing on the wife’s June, 1978 rule, the trial court’s September 20, 1978 judgment providing the following was rendered:
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Notary appointed herein to take an inventory of the community propeprty is hereby ordered to complete the partition and include therein, the net proceeds derived from the sale of the community home after deductions for community expenses have been made. The notary is further ordered to file his Proces Verbal for the disposition of the community and is to file a proposed distribution so that all parties may have an opportunity to challenge the same.”
Notwithstanding the clear requirements of the September 20, 1978 judgment, the notary repeatedly avoided filing a proces verbal in the form required by C.C.P. Articles 4608 and 4609. Instead, in the documents filed by him, he recited discussions and understandings which he contended constituted agreements. The wife and her attorney denied such agreements.
C.C.P. Articles 4608 and 4609 contemplate the notary will, in his proces verbal, list the agreed upon debts and claims and state the controversial claims and debts with his reasons for accepting or rejecting them. The notary’s initial failure to comply with this procedure effectively prevented the wife from obtaining a judicial hearing to contest a proposed distribution of the proceeds from the sale of the real estate before the controversies between the parties were judicially ruled on.
The trial judge, however, rectified the notary’s-initial failure by making the wife’s September, 1980 rule absolute and ordered the notary to file a proces verbal, thus giving each party an opportunity to oppose the notary’s proces verbal. Although the document filed by the notary, entitled “Recapitulation of an Accounting” does not fully comply with the requirements of C.C.P. Articles 4608 and 4609, when viewed in the light of the inventory[3] taken by the same notary, it was sufficient to constitute a proces verbal and to put the parties on notice he had not accepted the controversial claims urged by either party because he believed the parties had agreed to settle the controversial claims between themselves.
The husband did not file an opposition. According to the opposition filed by the wife, she did not agree with the values assigned by the appraisers to the Cadillac, the Ford pickup, and the boat and she claimed an entitlement to reimbursement for her court costs and attorney fees.
*806 The testimony elicited at the hearing on the wife’s opposition showed the husband had retained the asset itself or the funds from the sale of the Cadillac, the Ford pickup and the boat; whereas, the wife had retained furniture and household items, all under a non-judicial partition of all assets of the community except for the real estate, as permitted by C.C.P. Article 4607. The testimony also showed the husband had paid the community expenses including the fees of the wife’s attorney. Thus, although there never was an agreement as to what value was to be assigned to the assets retained by the husband or the wife, it is apparent a non-judicial partition had been agreed upon where each party retained the assets they possessed and the husband paid the existing community expenses from his own resources.
Accordingly, the judgment of the trial court is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the Notary’s proces verbal of the partition of the community of ac-quets and gains formerly existing between the parties is homologated and the notary ordered to disburse the sum of $15,186.38 to the wife.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the notary, upon producing proof of the disbursement to the trial court, is to be relieved of further responsibility and is to be discharged.
Each party to bear his own cost.
AMENDED, AND AS AMENDED, AFFIRMED.

. Only selected portions of the record in this litigation are now available to us. In'order to explain its decision, the Fourth Circuit, in the previous appeal, made an extensive review of the previous trial court proceedings. The delays in filing of pleadings or complying with court orders give the issues an appearance of being complex but when placed in proper sequence with other proceedings, they are not in fact complex. Due to the sparcity of the record and the failure of the briefs filed by counsel to recite these previous proceedings, we have relied on the opinion of the Fourth Circuit for the proceedings which preceded the matter presently before us.

. At that time the decision by the Fourth Circuit in Lee v. Lee, supra, had not as yet been rendered.

. The inventory was placed in the record by joint agreement of counsel after the hearing on the appeal in this case. In addition to the community real estate which was ordered sold, the notary listed in the inventory furniture and fixtures located in the community house, appraised at $1,557.00, and as property previously disposed of (1) household items appraised at $1,015.00, (2) jug of silver dollars and coins appraised at $50.00, (3) Honda Motor Bike appraised at $150.00, (4) savings bonds appraised at $1,256.25, and (5) a wooden boat appraised at $1,000.00, together with the following items which were in question: (1) assorted tools valued at $200.00 and (2) rental value of the house at $200.00 per month for 12 months or $7,200.00. The inventory also contained notations stating the 1964 Cadillac, the 1958 Ford pickup truck and the boat and motor had been sold and the funds retained by the husband and there existed community expenses including attorney fees of $6,000.00 of which $2,500.00 was for the wife’s attorney.